Rᴇɪᴛʟᴇʀ Kᴀɪʟᴀs & Rᴏsᴇɴʙʟᴀᴛᴛ LLC
Leo G. Kailas
Jocelyn L. Jacobson
885 Third Avenue, 20th Floor
New York, NY 10022
Phone: (212) 209-3050
Fax: (212) 371-5500
Email: lkailas@reitlerlaw.com
          jjacobson@reitlerlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE GEOFFREY A. ORLEY REVOCABLE TRUST
U/A/D 1/26/2000 and THE RANDALL C. ORLEY
REVOCABLE TRUST U/A/D 03/16/1994,

                        Plaintiffs,

          -against-

NICHOLAS GENOVESE, WILLOW CREEK
ADVISORS, LLC, WILLOW CREEK INVESTMENTS,
LP, AIMEE L. RICHTER, ESQ., LEE ANAV CHUNG
WHITE KIM RUGER & RICHTER LLP, and
SALVATORE SCIBETTA, ESQ.,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 18-cv-8460

**COMPLAINT and JURY
DEMAND**

       Plaintiffs The Geoffrey A. Orley Revocable Trust U/A/D 1/26/2000 ("Geoffrey Trust")

and The Randall C. Orley Revocable Trust U/A/D 03/16/1994 ("Randall Trust", and collectively

with Geoffrey Trust, the "Plaintiffs"), as and for their complaint against Defendants Nicholas

Genovese ("Genovese"), Willow Creek Advisors, LLC ("Willow Creek Advisors"), Willow

Creek Investments, LP ("Willow Creek Investments" and with Willow Creek Advisors, the

"Willow Creek Defendants"), Aimee L. Richter, Esq., ("Richter"), Lee Anav Chung White Kim

Ruger & Richter LLP, (the "Law Firm") and Salvatore Scibetta, Esq. ("Scibetta", and

collectively with Richter and the Law Firm, the "Legal Defendants") (Genovese, the Willow

Creek Defendants and the Legal Defendants will collectively be referred to as the "Defendants"),

allege as follows:

## SUMMARY OF CASE

1.     For more than two full years, Genovese and the Willow Creek Defendants, with

the assistance and participation of the Legal Defendants, made fraudulent, reckless and/or

negligent misrepresentations to the Plaintiffs for the purpose of inducing the Plaintiffs to (i)

invest millions of dollars in the Willow Creek Defendants, (ii) maintain such investments, and

(iii) forego the redemption of their investments.

2.     Genovese and the Willow Creek Defendants induced the investment by Plaintiffs

by knowingly or recklessly making the following oral and/or written statements, which Plaintiffs

have since learned are false:

- Falsely stating Genovese had been a partner at Goldman Sachs;

- Falsely stating that Genovese had been a Bear Stearns portfolio manager;

- Falsely stating that Genovese was licensed to serve in any capacity in the financial sector;

- Falsely stating that Genovese has an M.B.A. in Finance from Dartmouth – Tuck Business School;

- Falsely stating that Genovese has a B.S. in Finance from the University of Kentucky;

- Falsely stating that Genovese was related to the founders of the Genovese Drug Store empire and managed the Genovese family fortune;

2

- Falsely stating that Willow Creek Advisors had $25-30 billion in assets under management, when in reality, Willow Creek Advisors appears to have had less than $10 million in assets under management;

- Falsely stating that the Willow Creek Defendants had numerous employees when they had less than ten employees;

- Falsely stating that the Willow Creek Defendants had investment gains of 30-40% per year;

- Falsely stating that Willow Creek Advisors was a member of the Securities Investor Protection Corporation; and

- After each of the Plaintiffs had invested $1 million, falsely stating that there was a 5% return on such investments in the first month, in order to induce a second investment from each Plaintiff.

3.      In fact, not only were these statements false, but the Defendants knowingly, recklessly or negligently failed to disclose the fact that Genovese had an extensive criminal history, including, multiple convictions and custodial sentences for crimes of fraud and deceit, and also had a prior bankruptcy.

4.      In reliance on such false statements and omissions, each Plaintiff invested $2 million in the Willow Creek Defendants for a total investment of $4 million.

5.      In addition, in order to induce the Plaintiffs not to redeem or withdraw their investments in accordance with the investment documents, the Defendants knowingly, recklessly or negligently made the following oral and/or written statements, which Plaintiffs have learned are false, or omitted the true facts:

- Falsely stating that redemption would be in violation of the anti-money laundering statutes; and

3

- Falsely supporting the statement that the Willow Creek Defendants had high returns on invested funds and had billions of dollars under management.

6.      Scibetta further misled the Plaintiffs, knowingly, recklessly or negligently, by confirming the size of the Willow Creek Defendants to Plaintiffs, claiming that the Plaintiffs were small investors in the Willow Creek Defendants and acknowledging that he had a long business association with Genovese and implicitly confirming Genovese's past investment prowess and financial performance.

7.      Upon information and belief, Genovese and the Willow Creek Defendants misappropriated the Plaintiffs' investments to: (i) fund securities trading in Genovese's personal brokerage account which apparently sustained trading losses of over $8 million between 2015 and 2017, and (ii) fund Genovese's lavish lifestyle by paying for cash, food, hotels, travel, and transportation.

8.      The Randall Trust made its first request for redemption on March 2, 2016 and the Geoffrey Trust made its first request for redemption at approximately the same time.  The Plaintiffs were told that redemptions would be made according to Willow Creek Advisors' redemption policy.

9.      However, in July 2016 Richter and Genovese falsely stated to the Plaintiffs that they could not withdraw funds until they had been invested for a year.  In reliance on this statement, the Plaintiffs withdrew their redemption requests.

10.      Plaintiffs received a Private Placement Memorandum for Willow Creek Investments in April 2016 (the "PPM").  Genovese informed them that they needed to fill out the subscription agreement attached to the PPM in order to "tie loose ends together."  Upon

information and belief, even after the Plaintiffs executed the Subscription Agreement pursuant to

the PPM, the Plaintiffs' investments were never transferred from Willow Creek Advisors to

Willow Creek Investments.

11.     After the Geoffrey Trust made a new request for redemption of half of its

investment in September 2016, Genovese made representations to Geoffrey Orley in order to

convince him to withdraw the Geoffrey Trust's redemption request.  Genovese's attempts were

successful as Geoff Orley withdrew his redemption request.  Genovese's representations

included that the Willow Creek Defendants were financially sound and were achieving very high

returns.

12.     Moreover, providing more assurance to the Plaintiffs that they should not seek to

redeem or withdraw their investments, the K-1s sent to the Plaintiffs from Willow Creek

Advisors for 2016 reflected an increase in the value of the Plaintiffs' investments of almost 30%.

Upon information and belief, there had been, in fact, no investment of the Plaintiffs' funds and

certainly no gains.

13.     In response to the Randall Trust's renewed request for redemption in September

2016, it received $1 million back from Willow Creek Advisors in April 2017.

14.     In late April 2017, the Plaintiffs learned that Genovese had a criminal record.

Upon learning of this, the Plaintiffs immediately requested redemption of all funds invested in

the Willow Creek Defendants.  No further funds have ever been returned.

15.     Shortly after the May 2017 redemption requests, Genovese stated that there was a

notice procedure that needed to be followed in order to withdraw funds and that it would take

time.  After the purported notice periods passed, Genovese informed Geoffrey Orley that

5

Genovese could not easily liquidate the complex positions that the Willow Creek Funds had invested in and that the Plaintiffs  had to wait until the "stars are aligned" before Plaintiffs' funds could be returned to them.   Upon information and belief, there were then, and are now, no funds in either of the Willow Creek Defendants to redeem the Plaintiffs' investments.

16.     On January 23, 2018 another investor with the Willow Creek Defendants filed a complaint against Genovese and the Willow Creek Defendants in this Court, alleging fraud and other violations.  See <u>Colony Hills Capital, LLC. v. Willow Creek Advisors, et. al.</u>, 18 cv. 00593 (S.D.N.Y.)(DAB).

17.     On February 2, 2018, the Securities and Exchange Commission ("SEC") filed a complaint against Genovese and the Willow Creek Defendants alleging violations of securities laws.  See <u>Securities and Exchange Commission v. Nicholas J. Genovese, et. al.</u>, 18 cv. 942 (S.D.N.Y.)(JGK).

18.     A criminal indictment has also been brought against Genovese and he is presently under arrest.  Genovese's criminal trial is currently scheduled to commence on November 26, 2018.

19.     The Plaintiffs bring this action to recover the funds they invested in the Willow Creek Defendants, the trading gains that were represented to them and interest.

<b><u>JURISDICTION AND VENUE</u></b>

20.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and Sections 10(b) and 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §78(j)(b) and §78aa] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].  This Court has pendent jurisdiction over any claims asserted herein which arise

6

under state law, including without limitation, claims seeking damages for fraud, aiding and abetting fraud, civil conspiracy to commit fraud, negligent misrepresentation and conversion, pursuant to 28 U.S.C. § 1367 in that such claims flow from a common nucleus of operative facts.

21.     This Court also has jurisdiction over all of the claims in this action pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

22.     Venue in this District is proper under 28 U.S.C. § 1391(b)(1) and (2) as all entity defendants maintain their principal places of business, Genovese resides, Richter and Scibetta have offices in, and a substantial part of the events giving rise to the causes of action occurred, in the State of New York and, more particularly, in the Borough of Manhattan.

<u>**PARTIES**</u>

23.     Geoffrey Trust is a trust created under the laws of the State of Michigan by Geoffrey A. Orley ("G. Orley") with G. Orley acting as the trustee of the Geoffrey Trust.  The Geoffrey Trust offices are located in the State of Michigan.

24.     Randall Trust is a trust created under the laws of the State of Michigan by Randall C. Orley ("R. Orley") with R. Orley acting as the trustee of the Randall Trust. The Randall Trust offices are located in the State of Michigan.  R. Orley and G. Orley are brothers.

25.     Willow Creek Investment is a limited partnership formed under the laws of the State of Delaware with its principal place of business located at 1 Liberty Plaza, 23rd Floor, New York, New York.  Upon information and belief, Willow Creek Investment's sole general partner, Willow Creek GP, LLC ("Willow Creek GP"), is a New York limited liability company with its principal place of business in New York and whose sole member is Genovese.  Upon

information and belief, the limited partners of Willow Creek Investment are also New York citizens.  Upon information and belief, at all times relevant hereto, Willow Creek Investment operated or purported to operate a private investment partnership.

26.     Willow Creek Advisors is a limited liability company formed under the laws of the State of Delaware with its principal place of business located at 1 Liberty Plaza, 23rd Floor, New York, New York.  Upon information and belief, Genovese is the sole member of Willow Creek Advisors.  Upon information and belief, among other things, Willow Creek Advisors managed or purported to manage the Willow Creek Investment.

27.     Upon information and belief, Genovese is a resident and citizen of the State of New York.  At all times relevant hereto, Genovese was the sole principal and Managing Director of Willow Creek Advisors and the sole owner of Willow Creek GP, Willow Creek Investments' general partner.

28.     Richter is an attorney-at-law licensed to practice in the State of New York with a principal place of business currently located at 99 Madison Avenue, 8th Floor, New York, New York.  Ms. Richter became outside general counsel of Willow Creek Advisors on or about July 6, 2016.

29.     Upon further information and belief, Richter is a resident and citizen of the State of New York.

30.     Upon information and belief, the Law Firm is a partnership which has partners located in New York, California, and Mexico.

31.     Upon information and belief, Richter is a name partner of the Law Firm, and was a partner of the Law Firm at all relevant times herein, and Richter is the co-chair of the Law

Firm's matrimonial and family law practice group.  Upon information and belief, Scibetta was a

partner of the Law Firm at all relevant times herein and/or was employed by the Law Firm

during the period that he acted as outside general counsel of Willow Creek Advisors.

32.     Upon information and belief, the retainer agreement for both Mr. Scibetta's and

Ms. Richter's outside general counsel services for the Willow Creek Defendants was made

between the Willow Creek Defendants and the Law Firm.  The Law Firm either actively

participated with Richter and Scibetta in representing Genovese and the Willow Creek

Defendants or is liable under the doctrine of Respondeat Superior and/or general agency theory

for the actions of Richter and Scibetta, and is independently liable for its aiding and abetting of

the underlying fraud described herein and its participation in the conspiracy to commit same

33.     At all times relevant hereto, Scibetta was an attorney-at-law licensed to practice in

the State of New York with a principal place of business located in New York, New York, and

upon information and belief, he was a partner of and employed by the Law Firm during the time

that he acted as general outside counsel to Genovese and the Willow Creek Defendants.

34.     Upon further information and belief, Scibetta is a resident and citizen of the State

of New York.

### ALLEGATIONS OF FACT COMMON TO ALL COUNTS

**A.    Genovese Lies about his Background and the Willow Creek Defendants' Size and
Track Record to Induce The Plaintiffs to Invest Substantial Resources.**

35.     In or about September or October 2015, G. Orley was introduced to Genovese by

a mutual friend.  Genovese claimed he was part of the Genovese family that had owned a chain

of drug stores in the New York area and had sold the chain for approximately $300 million.

36.     During G. Orley's first meeting with Genovese, which took place in New York City, Genovese boasted of his massive wealth, his financial acumen, and his amazing professional success.  Among other things, he stated that, after attending college at the University of Kentucky and obtaining his M.B.A. from Dartmouth University, he made it "big" on Wall Street.

37.     Specifically, Genovese stated that he had worked at Bear Stearns and when that firm failed he started his own fund, Willow Creek, with three other traders from Bear Stearns.

38.     Genovese also stated that he had been a partner at Goldman Sachs.

39.     Genovese further stated that his Willow Creek fund (he did not specify the precise name of the fund during these early conversations), was worth between $25-30 billion and had investment returns of between 30-40% per year.

40.     Genovese also informed G. Orley that Genovese's mother, an heir to the Genovese drug store fortune, was the largest investor in the Willow Creek fund and that he always had to report to her how the fund was doing.  The fact that Genovese's mother was an investor was an important factor to G. Orley in making the decision that the Geoffrey Trust should invest in the Willow Creek Defendants.

41.     Genovese also stated that Willow Creek had numerous employees and a trading floor.

42.     Either at that first meeting or the next day, Genovese handed G. Orley a brochure, dated January 25, 2015, that allegedly reflected Willow Creek Advisors' performance for the period 2011-2014 (the "Brochure").  The Brochure stated that Willow Creek Advisors had been operating for over seven years, a statement that was untrue.

43.     The Brochure further stated that Willow Creek Advisors had been profitable every year it was in existence.  The Brochure further represented that investors could withdraw funds after six months.

44.     Finally the Brochure provided biographical information about Genovese, which confirmed the biographical details he had previously stated to G. Orley.

45.     G. Orley then introduced R. Orley to Genovese in or about October or November 2015.  G. Orley provided a copy of the Brochure to R. Orley.

46.     R. Orley met with Genovese, on November 16, 2015, at the Standard Hotel in New York City for breakfast.  During that meeting, Genovese made the same statements to R. Orley that he had previously made to G. Orley concerning his background and the Willow Creek Defendants.

47.     Upon information and belief, none of the statements that Genovese made to G. Orley or R. Orley was true.

48.     Genovese did not disclose to either Plaintiff that he had an extensive criminal record with multiple felony convictions for fraud and deceit nor did he disclose that he had once filed for bankruptcy.

49.     Sometime prior to their first investments, Genovese and/or Willow Creek Advisors provided the Plaintiffs with (i) a document regarding the "Personal Security & Privacy Information" of Willow Creek Advisors, and (ii) a document entitled "Fund Fees Agreement" with a Brokerage Form.

50.     The Personal Security & Privacy Information document falsely represented, among other things, that Willow Creek Advisors was a member of the Securities Investor Protection Corporation ("SIPC"), and contained a "Member SIPC" logo.

51.     The SIPC is a federally mandated, member-funded United States corporation, which constitutes an insurance program, and is designed to protect the customers of brokers or dealers from loss in the event of a financial failure of an SIPC member.  Being a member of the SIPC provides more legitimacy to an entity and had that effect on the Plaintiffs.

52.     Upon information and belief, Scibetta, as Willow Creek Defendants' general outside counsel in November 2015, assisted in the preparation of both the Personal Security & Privacy Information document and the Fund Fees Agreement.

53.     Willow Creek Advisors is not, and has never been, a member of the SIPC.

54.     Scibetta knew, consciously avoided, or should have known, that Willow Creek Advisors was not a member of the SIPC.

55.     Upon information and belief, Scibetta also knew, consciously avoided, or should have known that Genovese had previously been convicted for felony fraud-related criminal offenses.

56.     In reliance on the misrepresentations and the omissions set forth in paragraphs 2, 3, and 35-50 above, each Plaintiff invested $1 million in Willow Creek Advisors on November 24, 2015.

57.     At the end of 2015, Genovese sent Account Statements to the Plaintiffs reflecting a five percent increase in the value of their accounts in Willow Creek Advisors in the one month

since their investments.  Upon information and belief, these statements were false as the

Plaintiffs' funds had not been invested as reflected in the account statements.

58.     Based on the 2015 account statements and their continued reliance on

Defendants' misrepresentations and omissions, each of the Plaintiffs made an additional $1

million investment in Willow Creek Advisors in January 2016.

59.     In early 2016, the Plaintiffs received K-1s for 2015.  Consistent with the account

statements they had previously received they reflected a five percent capital gain for 2015.

Based on these K-1s, the Plaintiffs paid taxes on their purported gains.

**B.     The Legal Defendants Play an Integral Role in Maintaining an Air of Legitimacy, And Ensuring that the Plaintiffs Do Not Press for Withdrawal of Their Investments.**

60.     Upon information and belief, no later than August 2015, Genovese and/or one or

both of the Willow Creek Defendants entered into a written retainer agreement with the Law

Firm for the Law Firm to act as Willow Creek's outside general counsel and/or to render legal

services to Genovese and/or the Willow Creek Defendants in connection with fund investments.

61.     Upon information and belief, the Law Firm, through Scibetta and Richter,

rendered such legal services to Genovese and/or the Willow Creek Defendants and have acted as

Willow Creek's outside general counsel from 2015 through the present.

62.     Genovese introduced Scibetta to the Plaintiffs in early 2016 as Willow Creek's

"outside general counsel."

63.     Upon information and belief, in February 2016, Richter, a partner at the Law Firm

which also employed Scibetta, became involved in and had knowledge of the Willow Creek

Defendants' dealings with Plaintiffs.

13

64.     On July 6, 2016 Willow Creek Advisors officially announced that Richter was its new outside general counsel.

65.     Upon information and belief, Richter also knew, consciously avoided, or should have known that Genovese had previously been convicted for felony fraud-related criminal offenses.

66.     The Legal Defendants participated in and advanced Genovese's and the Willow Creek Defendants' fraudulent scheme, whether knowingly, recklessly or negligently. Among other things:

a)     Upon information and belief, the Legal Defendants drafted and prepared documents containing material misrepresentations with the knowledge and intention that such documents would be disseminated to potential investors, including, but not limited to, Plaintiffs.

b)     The Legal Defendants performed functions that were far and oddly afield of the traditional role fulfilled by a "general counsel," including managing Genovese's personal calendar and serving as the go-between for virtually all (legal and non-legal) communications to shield Genovese and hide the true state of affairs from the Plaintiffs.

c)     The Legal Defendants undertook tasks that, as the Plaintiffs would later learn, were well beyond their respective areas of experience for the sole purposes of creating the appearance of legitimacy for Genovese and the Willow Creek Defendants and inducing the Plaintiffs to forego attempts at withdrawing their respective investments in 2016.  Specifically, Scibetta, who publicly touts himself as a seasoned personal injury attorney, and Richter, who proclaims to devote her practice exclusively to matrimonial and family law, purported to provide

14

counsel services to a hedge fund and to provide advice to Plaintiffs on federal anti-money laundering statutes.

d)      The Legal Defendants maintained the purported legitimacy of Willow Creek, and the purported financial acumen, successful trading history and wealth of Genovese, through constant references to the Willow Creek Defendants' meteoric growth and glowing track record, the overwhelming satisfaction of the Willow Creek Defendants' "other" investors and business partners, and the time they spent with Genovese attending lavish events.

e)      Upon information and belief, the Legal Defendants rendered legal services to Genovese and/or his companies for securities investments despite knowing, consciously avoiding, or negligently failing to discover that Genovese had previously been convicted for felony fraud-related criminal offenses.

67.      Specifically, on February 24, 2016, R. Orley and his accountant met with Genovese, who included Scibetta in the meeting, at the "new" offices of the Willow Creek Defendants (the "February 2016 Meeting").  During the February 2016 Meeting, Scibetta gave credibility and legitimacy to Genovese and the Willow Creek Defendants by acknowledging, intentionally, recklessly or negligently, that he and Genovese had a long and successful business relationship.

68.       During the February 2016 Meeting Genovese reaffirmed that a large part of the investments under his control were for the Genovese family.  Scibetta listened to and affirmed Genovese's statements concerning the Willow Creek investments and operations.

69.      During the February 2016 Meeting, Scibetta also stated, intentionally, recklessly or negligently, that the Plaintiffs were small investors compared to the other investors in the

15

Willow Creek Defendants. Scibetta also stated that the names of these other investors were confidential.  Upon information and belief, Genovese was not investing for his family, there were few other investors and the Plaintiffs were not small investors.

70.     When asked, during the February 2016 Meeting, why the traders were not present trading, Genovese stated that they were in the process of moving the office from another location.

71.     When asked additional questions about trading during the February 2016 Meeting, such as how trades were made and what types of trades were being made by the Willow Creek Defendants, Scibetta answered that such information was confidential.   Upon information and belief, Scibetta shielded Genovese from these questions because he knew or should have known that Genovese and the Willow Creek Defendants had no trading operations.

72.     All of the above statements, made during the February 2016 Meeting, were made by or in Scibetta's presence, were false and were intended by Genovese and Scibetta to be relied on by the Plaintiffs in maintaining their investments in the Willow Creek Defendants.

73.     In February 2016, Richter also became involved in and had knowledge of Genovese's and the Willow Creek Defendants' dealings with Plaintiffs.

74.     In March 2016, both Plaintiffs requested the return of half their investment or $1 million each.  Willow Creek Advisors' customer service responded that the redemptions would be processed according to Willow Creek Advisors' redemption policy (which, according to the Brochure, was that redemptions were permissible after six months (which would have been May 2016)).

16

75.     In April 2016, the Plaintiffs were sent the PPM for Willow Creek Investments. The PPM listed Willow Creek GP as the General Partner and Willow Creek Advisors as the Investment Manager for Willow Creek Investments.   The PPM listed Riveles Wahab LLP as the Legal Advisor and Grant Thornton as the accountant.  Upon information and belief, Grant Thornton was never an accountant to any Willow Creek entity.  The PPM also reiterated Genovese's investment management background and his purported positions at Goldman Sachs and Bear Stearns.

76.     The PPM stated a different redemption period stated for investments in Willow Creek Investments than had been the case with Willow Creek Advisors: redemptions were permissible at the end of the next quarter if at least 90 days written notice had been provided.

77.     Genovese informed the Plaintiffs that they needed to subscribe to the PPM to "tie loose ends together".

78.     In May 2016, G. Orley met with Genovese and Scibetta in New York City (the "May 2016 Meeting").  At the time of the meeting, both Plaintiffs had outstanding redemption requests for half of their investments, which would have been due to be paid soon.

79.     During the May 2016 Meeting, Genovese reiterated to G. Orley, in the presence of Scibetta, that the Willow Creek Defendants were doing well.  In addition, Genovese made additional misleading statements about his successful financial background.  Although stated in his presence, Scibetta did not correct any of Genovese's misrepresentations.

80.     During the May 2016 Meeting, Scibetta confirmed his long association with Genovese.

81.     During the May 2016 Meeting, G. Orley asked Genovese and Scibetta the following questions:

- What kind of trades is Genovese engaging in?  Are the trades long or short?

- Which trader has the most experience?

- What kind of diversification is there in the Willow Creek fund?

- Which of the funds is the least risky?

- Can I visit the trading floor?

82.     Scibetta, not Genovese, answered G. Orley's questions.  Specifically, Scibetta stated to G. Orley during the May 2016 Meeting that the Plaintiffs were invested in the least risky fund.  Scibetta's answers to all the other questions that G. Orley had posed was that the information was too confidential and therefore those questions could not be answered.  Scibetta also stated that the traders were in a building a few blocks away and that visiting the floor was also too confidential.

83.     Upon information and belief, Scibetta shielded Genovese from G. Orley's questions because he knew or should have known that Genovese and the Willow Creek Defendants had no trading operations.

84.     In reliance on Genovese's and Scibetta's statements and the comfort provided by the professionalism of the PPM, G. Orley reduced his request for redemption from $1 million to $500,000.

85.     In early June 2016, the Plaintiffs executed the subscription agreement to the PPM.

86.     Upon information and belief, the Plaintiffs' investment was never transferred from Willow Creek Advisors to Willow Creek Investments.

18

87.     On July 6, 2016, Willow Creek Advisors announced that Richter was its new outside general counsel.

88.     On information and belief, Richter at the time she accepted this position, knew or should have known that (i) Genovese had misrepresented his background and investment history to investors such as the Plaintiffs, and (ii) that Genovese and the Willow Creek Defendants had no trading operations.

89.     On July 8, 2016, the Plaintiffs each received an email from Customer Service at Willow Creek Advisors informing them that their redemption requests had been flagged by Willow Creek Advisors' Compliance Department under the Anti-Money Laundering statutes of the SEC (the "AML").  That email stated that the redemption requests either had to be reduced or Plaintiffs' accounts completely closed.  Ms. Richter was copied on the July 8, 2016 email.

90.     However, during a follow-up call on July 13, 2016 among the Plaintiffs, their corporate counsel, Genovese, and Richter (the "July 2016 Call"), Richter intentionally, recklessly or negligently stated to the Plaintiffs that the AML barred the Plaintiffs from withdrawing any funds until their monies had been invested for at least one year.  This statement was untrue.

91.     In reliance upon Richter's statement, the Plaintiffs withdrew their requests for a return of their funds.

**C.     Renewed Requests for Redemption.**

92.     In September 2016, the Plaintiffs again requested redemption of $1 million of their investments with the funds to be returned at the end of the year, in accordance with Richter's statement concerning the requirements of the AML and the redemption requirements of

the PPM.  This was a renewal of the initial redemption requests, which had been withdrawn in reliance on Richter's statements during the July 2016 Call.

93.     In December 2016, based on Genovese's continued misrepresentations and actions – including planning a trip with G. Orley and having asked the friend who introduced G. Orley to Genovese to join the board of one of the Willow Creek Defendants, reflecting that someone G. Orley knew to be independent would be on the board - the Geoffrey Trust withdrew its redemption request.

94.     In early 2017, the Plaintiffs received K-1s from Willow Creek Advisors purporting to reflect the value of their investments as of December 31, 2016.  The K-1s showed that their investments were worth almost 30% more at the end of 2016 than at the beginning of the year.  Based on these K-1s, the Plaintiffs paid taxes on their purported gains.

95.     In continued reliance on the Defendants' prior representations and the K-1s, neither Plaintiff made any additional redemption requests, though the renewed redemption request of the Randall Trust remained outstanding.

96.     Early in 2017, G. Orley's friend received a call from Richter informing him that he could not join the board because, she claimed, knowingly, recklessly or negligently, that the Willow Creek Defendants were a family fund and the by-laws only permitted family members to be on the board.  Upon information and belief, this statement was false.

97.     On April 13, 2017 the Randall Trust received $1 million back from Willow Creek Advisors.

**D.    The Plaintiffs Learns that Genovese is a Fraud and Everything They Were Told about Genovese and the Willow Creek Defendants Was a Lie.**
.
98.     In late April 2017, for the first time, G. Orley learned from the friend who had

introduced him to Genovese, that Genovese had a criminal history.  G. Orley telephoned Genovese who stated that this was untrue.

99.     However, based on this new information, on May 3, 2017, both Plaintiffs requested that their accounts be closed and all remaining funds, including the gains, be returned to them.

100.    Due to Defendants' numerous and material misrepresentations and omissions made to Plaintiffs in the year and a half since meeting Plaintiffs' principals in the fall of 2015, Plaintiffs never sought to withdraw the entirety of their respective investments in the Willow Creek Defendants prior to May 3, 2017.  This was the first time that Plaintiffs sought to withdraw the entirety of their respective investments in the Willow Creek Defendants.

101.    G. Orley and R. Orley continued to press for a return of the Plaintiffs' funds throughout the remainder of 2017.  At first, Genovese claimed there was a notice procedure to follow which would take some time.  However, after the notice periods expired,  Genovese falsely stated to G. Orley that Genovese could not easily liquidate the complex fund positions and that he had to wait until the "stars are aligned" before Plaintiffs' funds could be returned to them.

102.    Upon information and belief, there are no funds in either of the Willow Creek Defendants to redeem the Plaintiffs' investments and they were fraudulent entities designed solely to induce investors, such as the Plaintiffs, to invest funds for the personal use of Genovese.

103.    Among the other misrepresentations made by the Defendants, the Plaintiffs now understand the following to be true:

- Genovese has no familial relation whatsoever to the Genovese family that founded and sold the Genovese drug store chain;

- Because he is unrelated to the founders of the Genovese drug store chain, Genovese has no claim to or control over the Genovese fortune and is not the billionaire that he so proudly proclaimed to be.  Genovese's mother was not an investor in the Willow Creek Defendants.  In fact, Genovese now admits that he has no assets, that he previously filed for bankruptcy, and has recently claimed to be of "indigent status" to obtain a public defender in criminal matters.

- Genovese never obtained a degree of any kind from either the University of Kentucky or Dartmouth.

- Genovese was never a Partner at Goldman Sachs or licensed to serve in any capacity in the financial sector.

- Willow Creek Advisors was never a member of the SIPC.

104.    Finally, Plaintiffs have learned that Genovese is a career criminal with an extensive history of fraud and deceit. By way of example, but likely not limitation:

- In March 1997, Genovese pled guilty in Illinois to theft by deception and received five years' prison time.

- In July 2003, Genovese was arrested in New York for multiple instances of attempted grand larceny and later pled guilty to the charges.

- In September 2003, Genovese was arrested again in New York for additional instances of attempted grand larceny and again pled guilty to the charges.

- In May 2004, Genovese was arrested in New York for identity theft.  He later pled guilty to the charges and was

sentenced to two or three years in prison.

- In September 2004, Genovese was arrested in New York for forgery, third degree grand larceny, and second degree scheme to defraud.  He later pled guilty to those charges and was required to pay restitution to the victims.

## **FIRST COUNT**

### **(Violation of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 Promulgated Thereunder [17 C.F.R. §240.10b-5] Against All Defendants)**

105.     Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs as if fully set forth herein.

106.     Defendants, directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities, i.e., Plaintiffs' respective investments in Willow Creek Defendants, engaged in a plan, scheme, and course of conduct, pursuant to which they knowingly or recklessly (i) employed devices, schemes and artifices to defraud Plaintiffs, (ii) made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (iii) engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

107.     Such scheme was intended to and did: (i) deceive investor Plaintiffs to make their first round of investments in the Willow Creek Defendants, as alleged herein, (ii) cause Plaintiffs to make a second investment in the Willow Creek Defendants, as alleged herein, (iii) cause Plaintiffs to retract their March 2016 requests for withdrawal of their respective investments, (iv)

cause G. Orley to withdraw The Geoffrey Trust's September 2016 request for redemption; and (v) cause Plaintiffs to maintain their investments, in whole or in part, in Willow Creek Advisors from November 2015 until May 3, 2017.

108.    Defendants knowingly and intentionally made false and fraudulent statements of material facts to Plaintiffs.

109.    As set forth above, Defendants' false and fraudulent statements of material facts included, but were not limited to,  misstatements that: (i) Genovese  had  been  a  "Partner  at Goldman  Sachs";  (ii) Genovese had been a "Portfolio Manager" at Bear Stearns; (iii) Genovese was licensed to serve in any capacity in the financial sector; (iv) Genovese earned a degree from the University of Kentucky; (v) Genovese obtained an M.B.A. in Finance from  Dartmouth University; (vi) Genovese was related to the founders of the Genovese Drug Store empire and managed the Genovese family fortune; (vii) Willow Creek Advisors managed $25-30 billion in assets; (viii) Willow Creek Defendants had numerous employees; (ix) Willow Creek Defendants had investment gains of 30-40% per year; (x) Willow Creek Advisors was a member of the SIPC; (xi) after Plaintiffs had invested $1 million, falsely stating that there was a 5% return on such investments in the first month; (xii) providing false support for the statement that the Willow Creek Defendants had high returns on invested funds and had billion dollars under management, (xiii) Willow Creek Defendants reported a 30% gain in 2016; (xiv) Willow Creek Advisors had been operating for seven years; (xv) that Scibetta had a long and successful business relationship with Genovese; and (xvi) redemption of $1 million by each Plaintiff in 2016 would have been in violation of the AML statutes (the "Misrepresentations").

110.    Defendant knowingly and intentionally concealed material facts from Plaintiffs.

111.     As set forth above, Defendants failed to disclose and/or concealed the following materials facts, including, but not limited to, the following: (i) Genovese was never employed by Goldman Sachs or Bear Sterns; (ii) Genovese has never been licensed to serve in any capacity in the financial sector; (iii) Genovese never graduated from the University of Kentucky; (iv) Genovese did not obtain an M.B.A. from Dartmouth University; (v) Genovese has  no  familial relationship  to  the  Genovese  family  that  founded  and  sold  the Genovese Drug Store chain; (vi) Genovese had no claim to or control over the Genovese Fortune; (vii) Willow Creek Advisors had less than $10 million in assets under management; (viii) Willow Creek Defendants had less than 10 employees; (ix) Genovese  had  no  assets, previously filed for bankruptcy, and has claimed to be of "indigent status" to obtain a public defender; (x) Genovese previously pled guilty in Illinois to theft by deception and received a five-year prison sentence; (xi) on at least two occasions, Genovese was arrested for and pled guilty in New York to multiple instances of attempted grand larceny; (xii) Genovese was arrested for and pled guilty in New York to identity theft and received a two- to three-year prison sentence; and (xii) Genovese was arrested for and pled guilty in New York to forgery, grand larceny, and scheme to defraud and was ordered to pay restitution to his victims (the "Omissions").

112.     Defendants had actual knowledge of both the falsity of the Misrepresentations and the Omissions and intended thereby to deceive Plaintiffs or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made.  Such Misrepresentations and Omissions of Defendants were committed willfully or with reckless

disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

113. Plaintiffs justifiably, reasonably and detrimentally relied upon Defendants' material Misrepresentations and Omissions.

114. By reason of Defendants' conduct described above, Plaintiffs have sustained damages in an amount to be determined at trial, but in no event less than $3,000,000.00.

115. By reason of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## SECOND COUNT

### (Fraud Against All Defendants)

116. Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs as if fully set forth herein.

117. Defendants knowingly and intentionally made false and fraudulent statements of material facts to Plaintiffs, i.e., the Misrepresentations.

118. Defendant knowingly and intentionally concealed material facts from Plaintiffs, i.e., the Omissions.

119. Genovese and the Willow Creek Defendants knew, or recklessly disregarded, that the Misrepresentations were false at the time they were made to the Plaintiffs.

120. Upon information and belief, Scibetta and Richter, and the Law Firm by reason of the doctrine of respondeat superior and/or general agency theory, knew, or recklessly disregarded, that the Misrepresentations were false at the time they were made to the Plaintiffs.

121.    In fact, not only were these Misrepresentations false, but the Defendants knowingly, recklessly or negligently failed to disclose the fact that Genovese had  an extensive criminal history, including, multiple convictions and custodial sentences for crimes of fraud and deceit, and also had a prior bankruptcy.

122.    Each of the Defendants had, or should have had, superior knowledge of the facts that they mispresented or failed to disclose.

123.    Defendants intentionally made the Misrepresentations, and concealed the Omissions, in order to induce Plaintiffs to (i) invest in funds managed by Genovese and the Willow Creek Defendants, (ii) maintain those investments, in whole or in part, from November 2015 to May 3, 2017, and (iii) withdraw requests to redeem their investments.

124.    Plaintiffs reasonably, justifiably, and detrimentally relied on the Misrepresentations and Omissions in investing.

125.    Plaintiffs reasonably, justifiably and detrimentally relied on the Misrepresentations and Omissions in deciding to maintain their investments, in whole or in part, from November 2015 until May 3, 2017.

126.    Plaintiffs reasonably, justifiably, and detrimentally relied on the Misrepresentations and Omissions in withdrawing their respective March 2016 and, in the case of the Randall Trust, September 2016, requests to redeem their investments.

127.    Had the truth about these material facts been accurately disclosed and represented, Plaintiffs would not have, among other things, initially invested in the funds purportedly managed by Genovese and/or the Willow Creek Defendants, maintained their investments for over a year and a half, or withdrawn any of the subject requests to redeem their investments.

27

128.    As a direct and proximate result of these intentional and deliberate acts, Plaintiffs have suffered, and will continue to suffer, significant damages in an amount to be determined at trial but in no event less than $3,000,000.

## THIRD COUNT

### (Aiding and Abetting Fraud against the Legal Defendants)

129.    Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs as if fully set forth herein.

130.    Genovese and/or the Willow Creek Defendants perpetrated a fraud against Plaintiffs, whether pursuant to federal securities law and/or state common law.

131.    If it is found that the Legal Defendants did not commit fraud, then the Legal Defendants aided and abetted Genovese and/or the Willow Creek Defendants in connection with their fraud.

132.    The Legal Defendants had actual knowledge of the fraud and/or consciously avoided actual knowledge of the fraud.

133.    The Legal Defendants substantially assisted in the perpetration of the fraud by among other actions more fully described above, drafting documents for such defendants, including the "Personal Security & Privacy Information" of Willow Creek Advisors and "Fund Fees Agreement",  concealing Genovese's criminal history and providing advice that the Plaintiffs could not withdraw their investments.

134.    As a direct and proximate result of the fraud and the Legal Defendants' participation therein, Plaintiffs have suffered, and will continue to suffer, significant damages in an amount to be determined at trial but in no event less than $3,000,000.

## FOURTH COUNT

### (Civil Conspiracy to Commit Fraud against all Defendants)

135.    Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs as if fully set forth herein.

136.    As described more fully above, a fraud was perpetrated upon Plaintiffs, whether pursuant to federal securities law and/or state common law.

137.    The Defendants had a common scheme to defraud the Plaintiffs, engaged in conduct to further that scheme, and did in fact defraud Plaintiffs out of millions of dollars.

138.    Upon information and belief, each of the Defendants agreed to participate in a scheme to defraud Plaintiffs.

139.    As described more fully in paragraphs 35-50, 52, 57, 66-71, 78-82 and 90 above, each of the Defendants took an overt act in furtherance of that agreement.

140.    The fraud was committed jointly by all of the Defendants, and because of Defendants' common purpose and interest, each of the Defendants' actions may be imputable to the others.

141.    As a direct and proximate result of the fraud, and by reason of the Defendants' agreement to participate and subsequent participation therein, Plaintiffs have suffered, and will continue to suffer, significant damages in an amount to be determined at trial but in no event less than $3,000,000.

## FIFTH COUNT

### (Negligent Misrepresentation Against All Defendants)

142.     Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs as if fully set forth herein.

143.     Defendants, as corporate principals, investment entities and attorneys, had a pecuniary duty to provide accurate information to Plaintiffs in connection with Plaintiffs' investments in funds managed by Genovese and the Willow Creek Defendants, and Plaintiffs' related requests to withdraw such investments.

144.     Plaintiffs maintained a direct business relationship with Genovese and the Willow Creek Defendants and had contractual privity with them.

145.     With regard to the Legal Defendants, by reason of their role as general outside counsel to the Willow Creek Defendants and the circumstances of Scibetta and Richter's direct communications with investor Plaintiffs in the February 2016 Meeting, May 2016 Meeting and the July 2016 Call, as alleged above, a special relationship of trust and confidence existed between the Legal Defendants and Plaintiffs.

146.     Mr. Scibetta participated in both the February 2016 and May 2016 Meetings with principals of Plaintiffs and communicated with them directly, making material Misrepresentations and Omissions to R. Orley and G. Orley.  Upon information and belief, Mr. Scibetta also assisted in the preparation of the Personal Security & Privacy Information document which falsely represented that Willow Creek Advisors was an SIPC member.

147.     Not only was Ms. Richter copied on the July 8, 2016 email from Willow Creek Advisors' Compliance Division to Plaintiffs' principals espousing a factually erroneous

30

interpretation of the AML, and failed to correct such misstatement, but she participated in the July 2016 Call with Plaintiffs' principals and directly gave Plaintiffs false advice regarding the effect of the AML on Plaintiffs' right to redeem and/or withdraw their respective investments, whether knowingly, recklessly or negligently.

148.     By acting as general outside counsel to the Willow Creek Defendants, Scibetta and Richter also engaged in the practice of law outside the scope of their usual areas of practice – personal injury and family/matrimonial law, respectively.

149.     The Law Firm is liable for Scibetta and Richter's conduct by reason of the doctrine of *respondeat superior* and/or general agency theory.

150.     In making the Misrepresentations and Omissions described above to Plaintiffs, Defendants failed to provide Plaintiffs with accurate information informing Plaintiffs' decision to invest, about the nature and success of Plaintiffs' investments and/or the legality and propriety of Plaintiffs' requests for withdrawal of same.

151.     Defendants, at best, failed to exercise reasonable care in obtaining accurate information to present to Plaintiffs or in communicating the information to Plaintiffs.

152.     Plaintiffs justifiably relied upon the Misrepresentations and Omissions of Defendants in (i) deciding to invest in Willow Creek Defendants' and Genovese's funds, (ii) maintaining their respective investments, in whole or in part, in Willow Creek Advisors from November 2015 through May 3, 2017, and (iii) withdrawing their respective March 2016 and, in the case of the Randall Trust, September 2016, requests to redeem their investments.

153.     As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiffs have suffered, and will continue to suffer, significant damages damages in an amount to be determined at trial but in no event less than $3,000,000.

### SIXTH COUNT

### (Negligence Against All Defendants)

154.     Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs as if fully set forth herein.

155.     Defendants made the Misrepresentations and Omissions to Defendants.

156.     By acting as general outside counsel to the Willow Creek Defendants, Scibetta and Richter also engaged in the practice of law outside the scope of their usual areas of practice – personal injury and family/matrimonial law, respectively.

157.     Defendants owed Plaintiffs a duty of care in rendering accurate information and advice to them in connection with Plaintiffs' respective investments in the purported funds managed by Genovese and the Willow Creek Defendants and the redemption and/or withdrawal thereof.

158.     Defendants breached this duty of care by, either with reckless disregard for the truth or negligently, making the Misrepresentations and Omissions to Plaintiffs.

159.     As a direct and proximate result of Defendants' negligence, Plaintiffs (i) decided to invest in Willow Creek Defendants' and Genovese's funds, (ii) maintained their respective investments, in whole or in part, in Willow Creek Advisors from November 2015 through May 3, 2017, and (iii) withdrew their respective March 2016 and, in the case of the Randall Trust, September 2016, requests to redeem their investments.

160.    As a further direct and proximate result of Defendants' negligence, Plaintiff sustained damages in an amount to be determined at trial, but in no event less than $3,000,000.00.

## SEVENTH COUNT

**(Conversion Against Genovese and the Willow Creek Defendants)**

161.    Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs as if fully set forth herein.

162.    The monies transferred by Plaintiffs to Willow Creek Advisers for their investment in the funds purportedly managed by Genovese and the Willow Creek Defendants were and are the property of Plaintiffs and were designated solely for investment purposes to the Willow Creek Defendants.  Until such time as the Willow Creek Defendants invested such monies, Plaintiffs' funds remained the property of Plaintiffs.

163.    Upon information and belief, Genovese and the Willow Creek Defendants never invested Plaintiffs' monies, and instead misappropriated the Plaintiffs' investments to: (i) fund securities trading in Genovese's personal brokerage account which apparently sustained trading losses of over $8 million between 2015 and 2017, and (ii) fund Genovese's lavish lifestyle by paying for cash, food, hotels, travel, and transportation.

164.    Plaintiffs did not consent in any manner to Genovese and the Willow Creek Defendants taking the monies at issue for Genovese's own personal use and enjoyment.

165.    With the exception of $1,000,000.00 returned to the Randall Trust on April 13, 2017, neither Genovese nor either of the Willow Creek Defendants have returned the monies invested by Plaintiffs back to Plaintiffs.

166.     Genovese, as the principal responsible for the acts of the Willow Creek Defendants, is vicariously liable to Plaintiffs for the harm caused to Plaintiffs as the result of Willow Creek Defendants' conversion of Plaintiffs' monies.

167.     As a proximate result of Genovese and the Willow Creek Defendants' conversion and misappropriation of Plaintiffs' monies, Plaintiffs have been damages in an amount to be proven at trial, but in no event less than $3,000,000.00, plus interest thereon.

**WHEREFORE,** Plaintiffs demand judgment against Defendants, jointly and severally, for: (i) compensatory, special, consequential, and incidental damages, plus interest, (ii) punitive damages, (iii) pre-judgment interest as allowed by law, (iv) reasonable counsel fees and costs, and (v) such further relief as the Court finds to be just and proper.

Dated: New York, New York
        September 17, 2018

REITLER KAILAS & ROSENBLATT LLC


By: /s/ Jocelyn L. Jacobson
     Leo G. Kailas
     Jocelyn L. Jacobson
     885 Third Avenue, 20th Floor
     New York, New York 10022
     (212) 209-3050

     Attorneys for Plaintiffs